TONEY *v.* RAINES.

5-605                                          275 S. W. 2d 771

Opinion delivered February 28, 1955.

*Gannaway & Gannaway* and *Gerland P. Patten,* for appellant.

*Owens, Ehrman & McHaney,* for appellee.

MINOR W. MILLWEE, Justice. E. E. Raines, Sr., and Theresa Korte Raines, his wife, resided at 313 Skyline Drive in North Little Rock, Arkansas, at the time of his death on July 30, 1952. Appellants are the children of Mr. Raines by a former wife and the personal representatives of his estate. They filed this suit on April 20, 1953 against Theresa Korte Raines and Rosa Korte, her mother, appellees here, to set aside two deeds executed in December, 1950, and to have the court declare that Mrs. Raines had only a life estate in their home in North Little Rock.

According to the allegations of the complaint E. E. and Theresa Korte Raines were married in September, 1950 and on October 31, 1950 he executed a will devising and bequeathing to her a life estate in the home place and one-third of his other property after certain specific bequests to relatives and his church. It was further

alleged that on December 21, 1950, Mrs. Raines persuaded her husband to join with her in the execution of a deed conveying the home place to her mother who, on the same day, conveyed the property back to Mr. and Mrs. Raines jointly; and that the sole consideration for the execution of said deeds was the promise by Mrs. Raines to make a codicil to her will leaving the property to his heirs at her death. In an amendment to the complaint it was also alleged that execution of the deeds was obtained by fraudulent promises, statements and misrepresentations of appellees. The answer of appellees was a general denial of some of the allegations and a plea of the statute of frauds.

About the only evidence offered by appellants at the trial was a certain memorandum made by E. E. Raines, Sr., and the testimony of W. M. Herndon, attorney for Mr. and Mrs. Raines at the time of the execution of the deeds in question. The chancellor sustained appellee's objection to both items of evidence. We proceed to a consideration of such rulings, which constitute the only issues on this appeal.

I. *The Memorandum.* E. E. Raines, Sr., was president of E. E. Raines Company, a general insurance agency at Little Rock, in 1950 and his son-in-law, John D. Toney, was then in the employ of the company. Toney testified that, in addition to running the insurance agency, deceased occasionally bought and sold land and kept written memoranda in connection with such transactions. He identified as being in deceased's handwriting a memorandum Mr. Raines handed him sometime after December 21, 1950 and directed him to place in a safe of the insurance company where it was found after the death of Mr. Raines. The memorandum was written on a letterhead of the E. E. Raines Company and is cop-

ied in the margin.[1]  There was attached to the memorandum a receipt purportedly signed Dec. 21, 1950 by W. M. Herndon showing payment of $10.00 for legal services by "E. E. Raines, Jr."

It should first be noted that although appellants seek to set aside certain deeds because of a total failure of consideration, there is no showing as to the consideration actually stipulated in said deeds.  The instruments were not introduced and the record is silent as to the consideration recited therein.  It should also be noted that the memorandum was not signed by Mrs. Raines nor is there any evidence that it was made in her presence or with her knowledge.  Insofar as this record discloses, it is simply the *ex parte,* unsworn statement of Mr. Raines made some time subsequent to the execution of the two deeds in question.  The rule applicable in this situation was involved in *Hill* v. *Talbert,* 210 Ark. 866, 197 S. W. 2d 942.  In that case we approved, as being in accord with our own cases, the following statement of the rule in 31 C. J. S., Evidence, § 216a: "Generally a party cannot make evidence for himself by his own declarations, and it is a well established general rule that a statement of a party, whether oral or written, which is of a self-serving nature is not admissible in evidence in his favor.  Such declarations are not rendered admissible by the mere fact that they were made in the presence of, or in a conversation or correspondence with, the opposing party or his agent, in the absence of assent to their truth by the opposing party, see subdivision (b) of this section; by having been brought to the attention of the other party or his agent and commented on by him; by having been part of a conversation or correspondence with the declarant's witness; or by being brought out on

---

[1] "The enclosed is a receipt for legal services to M. W. Herndon an attorney at 401½ Main St.—In which he drew up a document of a codicil to Theresa's Will in which she agrees to leave the Dwelling in which she and I live to my heirs in case she should die.

"Agreeing that if I deed to her in entirety the Dwelling in case I died and leave it to her by reason of this will she will will or bequeath the same property to My heirs—at her death.
"12/21/50                                    E. E. Raines.
"A copy is on file With Attorney."

cross-examination. Such declarations are equally inadmissible when offered by the declarant's representatives, devisees, or heirs, since, as is noted, *infra*, this subdivision, the death of a declarant does not render his statements admissible. The rule of exclusion also applies when such declarations are offered in evidence by third persons on their own behalf.

"The rule excluding self-serving declarations is a part of the hearsay rule, and its purpose is to prevent the manufacturing of evidence. A self-serving declaration within the rule is one made by a party in his own interest at some place and time out of court and it does not include testimony which he gives as a witness at the trial . . .

"*Effect of death of declarant*. The death of the declarant does not render his self-serving declarations admissible, except in jurisdictions where the rule has been changed by statute." See also, 20 Am. Jur., Evidence, § 558.

While parol evidence is admissible to show the true consideration upon which a deed rests, it may not be used to show there was no consideration. *Mitchell* v. *Smith,* 206 Ark. 936, 175 S. W. 2d 201. Nor is parol evidence in the form of self-serving declarations admissible to vary the terms of a written instrument. *Smith* v. *School District No. 14,* 192 Ark. 792, 94 S. W. 2d 706.

Appellants say the memorandum was admissible to prove their allegations of fraud and misrepresentation but cite no authority by which a self-serving statement is admissible for that purpose in the absence of any other showing that fraud or misrepresentation was practiced upon the deceased.

It is also insisted that the memorandum should be admitted as a part of the *res gestae*. It is well settled that in order to be a part of the *res gestae* an act or declaration must be so closely connected with the transaction or fact under investigation as to constitute a part of it. 20 Am. Jur., Evidence, § 662. There is no evi-

dence here that the memorandum was written at or so near the time of the execution of the deeds as to form a part of that transaction. The deeds were executed in the office of an attorney in North Little Rock while the memorandum was written on the letterhead of the insurance agency which is located in Little Rock. This is some indication that it was written some time after the execution of the deeds.

Appellants finally contend the memorandum should be admitted as a business entry under Ark. Stats., §§ 28-928 and 28-929. The statute relied upon embodies the so-called "shop-book rule" and applies to memoranda or records made "in regular course of business" or profession. Mr. Raines was engaged in the insurance business. The memorandum was not made in the regular course of his business but pertained to a private and personal transaction between Mr. Raines and his wife. The private memoranda of deceased persons which are self-serving in character are generally held inadmissible in evidence. 20 Am. Jur., Evidence § 1048; 103 A. L. R. 1508. We find nothing in the instant case to preclude the application of this rule.

II. *The Testimony of W. M. Herndon.* Mr. Herndon acted as attorney for both Mr. and Mrs. Raines in preparing the deeds in question. He was called as a witness by appellants and interrogated concerning his knowledge and information of the transactions between Mr. Raines and his wife. In sustaining appellees' objection to this testimony as privileged the court pointed out that its only purpose was to develop an admission against the interest of Mrs. Raines, and to this extent the confidential relationship of attorney and client involved a privilege which she was entitled to claim. The proffered testimony was inadmissible under the fourth subdivision of Ark. Stats., § 28-601, which designates as being incompetent to testify: "An attorney, concerning any communication made to him by his client in that relation, or his advice thereon, without the client's consent." Mrs. Raines not only refused to give her consent

to the giving of the testimony but strenuously objected to it.

However, appellants say Mrs. Raines waived the privilege of non-disclosure by taking the witness stand and testifying about the confidential communications between herself and her attorney. They rely on the rule that an owner of the privilege cannot, after testifying concerning such confidential communications himself without objection, invoke the privilege to prevent other parties to the communications from testifying to them. But the record here discloses that, although the trial court encouraged it, Mrs. Raines was never called nor sworn as a witness. It does appear that after the other witnesses had testified and without Mrs. Raines being called as a witness, she did state, in response to two questions propounded by counsel for appellants, that she did not possess the codicil to her will prepared by Mr. Herndon and that no such codicil was in effect. After this occurred appellants offered no further evidence concerning the privileged matter which had been duly objected to when it was offered. This court has consistently held that so long as a testator lives, the attorney who drew his will cannot, without the testator's consent, testify to communications made to him concerning the will or its contents. *Bradway* v. *Thompson*, 139 Ark. 542, 214 S. W. 27. We hold there was no waiver of the privilege in the circumstances.

The decree is affirmed.